PER CURIAM.
This cause is before us on appeal by Titan Atlantic Construction Company from a final summary judgment entered against it on the ground that a previously executed Mutual Release Agreement barred its present action against Quality Electric Service, Inc. for conversion. We reverse.
The complaint alleged that Quality was subcontracted by Titan to perform electrical work on a 600 unit family housing project, which Titan was under contract to construct for the United States Navy Department. The complaint further alleged that a dispute had arisen between the United States Department of Labor and Quality concerning Quality’s failure to comply with the federal wage and hour law. Funds payable to Titan on its general contract with the Navy were retained by the Navy in order to cover the alleged back wage liability of Quality. On September 20,1979, Quality satisfied that liability by paying $24,315.32 to the Department of Labor. The Department of Labor then informed the Navy to release the retained funds to Titan. On October 30, 1979, the Navy released the funds to Quality, who thereafter, despite numerous demands, refused to return same to Titan, the rightful owner.
In its answer, Quality alleged as its second and fourth defenses that Titan was either estopped or barred from asserting its present claim against Quality because Titan failed to include that claim as a compulsory counter-claim in a previous suit between the parties and/or because the present claim was released by a mutual release agreement previously executed by the parties on October 16, 1979. A copy of that agreement was made a part of the pleadings.
The prefatory language of the Mutual Release Agreement sets forth Quality’s claim against Titan for monies allegedly owed for work performed and labor provided and Titan’s counter-claim against Quality for damages caused by alleged breaches of contract. It was also noted that Titan had made claims for payment from the Navy and that said claims involved work performed by Quality. The Agreement then reads, in pertinent part, as follows:
NOW THEREFORE, the parties to this agreement, for and in consideration of the following, wish to settle the disputes and differences described above, as well as any other disputes and differences, which have arisen or may arise, between Quality and Titan and between Quality and Safeco arising out of or related to the construction of the Naval housing project at Mayport/Cecil/Jacksonville, Florida, and accordingly the parties agree to the following:
1. In consideration of the mutual relinquishment of their respective legal rights with reference to the above-mentioned disputes and differences, in consideration of the execution of this mutual release, and in consideration of the immediate payment by Titan, for itself and on behalf of Safeco, by certified check in the amount of $144,251.26 issued jointly to Quality and Trotter, Bondurant, Griffin, Miller & Hishon, Quality, for itself and its legal repre *1158 sentatives, successors and assigns, expressly releases Titan, individually, Safeco, individually, and the owner, the United States of America Naval Facilities Engineering Command, individually, and their legal representatives, successors, and assigns from all liability from claims and demands arising out of or relating to the construction of the Naval Housing project at Mayport/Ce-cil Field/Jacksonville, Florida, and Titan and Safeco, for themselves and their legal representatives, successors and assigns expressly release Quality and its legal representatives, successors and assigns from all liability from claims and demands arising out of or relating to the construction of the Naval Housing project at Mayport/Cecil Field/Jacksonville, Florida.
On the basis of that document, Quality moved for summary judgment. Attached to that motion was the sworn affidavit of B. D. Blackman, President of Quality Electric, who alleged, in part, that Quality paid, under protest, the amount of $24,315.32 to the Department of Labor in order to resolve its wage dispute with the Department and to facilitate final payment under the subcontract. The affiant further alleged that at the time the parties executed the Mutual Release Agreement, Titan had knowledge of the unresolved status of Quality’s wage dispute with the Department. The affiant therefore contended that under the general terms of the Mutual Release Agreement, Titan surrendered any claims which it may have had to the $24,315.32.
Robert Kleiner, Vice President and corporate counsel for Titan Atlantic Construction Company, averred, in part, that the release of any claim involving the wage dispute was not within the contemplation of the parties when the Mutual Release Agreement was executed because it was believed that said dispute had already been settled by Quality’s payment of funds to the Department and the Department’s letter to the Navy advising it to release the retained funds to Titan. The affiant further averred that at the time the agreement was executed, Titan had no suspicion that Quality would thereafter be paid the retained funds which rightfully belonged to Titan.
The court granted Quality’s motion for summary judgment on the ground that the terms of the Mutual Release were such as to bar Titan’s claim against Quality for conversion of funds. We conclude, however, that the terms of the agreement are sufficiently unclear and ambiguous so as to create a genuine issue of material fact respecting the correct interpretation of the scope of the contract. Summary judgment is, therefore, precluded. Griffin Builder’s Supply, Inc. v. Jones, 384 So.2d 265 (Fla. 2nd DCA 1980).
Accordingly, the summary judgment is REVERSED, and the cause REMANDED for further proceedings.
BOOTH, LARRY G. SMITH and SHIVERS, JJ., concur.